Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Theodore W. Maya, SBN 223242
*tmaya@ahdootwolfson.com*
Christopher E. Stiner, SBN 276033
*cstiner@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| JORDAN COLOSIMO and EVAN WAHL, individually and on behalf of all others similarly situated, | Case No. 2:20-cv-04187 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| AMERICAN HONDA MOTOR CO., INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiffs Jordan Colosimo and Evan Wahl (collectively, "Plaintiffs"), acting individually and on behalf of all others similarly situated, bring this action for damages and equitable relief against Defendant American Honda Motor Co., Inc. ("Defendant"):

## NATURE OF THE CASE

1.      This is a class action brought against Defendant on behalf of all consumers who purchased or leased Defendant's model years 2016-2020 Acura MDX or 2019-2020 Acura RDX ("Vehicle(s)" or "Class Vehicle(s)").

2.      Defendant's Vehicles are defective, unsafe and routinely behave in such a way as to place drivers of the Vehicles in danger. Plaintiffs are informed and believe, that the Vehicles contain design, manufacturing, and/or workmanship defects that cause sudden, rapid deceleration, engine stalls, hesitation upon depressing the gas pedal, abrupt shutdowns and shifts into neutral while driving, especially at highway speeds, due to miscommunication among the computers and software that control the engine, throttle and transmission (the "Defect").

3.      The Defect is inherent in each Class Vehicle and was present at the time of sale or lease to each Class member.

4.      The Defect in Defendant's Vehicles renders the Vehicles unsafe and unfit for use. Although numerous consumers have experienced the unsafe conditions stemming from the Acura RDX and MDX Defect, and consumers have reported the Defect to Defendant, Defendant has not repaired or otherwise addressed the Defect.

5.      Defendant designed and manufactured the Class Vehicles, as well as the electrical, throttle, engine, and transmission systems and the software that controls these systems within the Vehicles.

6.      In the United States, Defendant provides warranty coverage for the Vehicles under one or more warranties. Defendant currently provides a New Vehicle Limited Warranty that covers vehicles under the Acura brand for 4 years or 50,000 miles and a Powertrain Limited Warranty for powertrain components for 6 years or 70,000 miles.

1

7.     Because the Defect was present at the time of sale or lease of the Vehicles and concealed from Plaintiffs and other owners and/or lessees of Vehicles, Defendant was required to repair the Vehicles under the terms of the warranties. Yet, Defendant has failed to honor its warranties.

8.     Through the continued sale of the Vehicles, Defendant has engaged in unfair, deceptive, and misleading consumer practices with respect to the marketing and sale and/or lease of the Vehicles, and has breached its contracts and warranties with the Vehicles' purchasers and lessees of Defendant's model years 2016-2020 Acura MDX or 2019-2020 Acura RDX.

9.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. ("Rule") 23 for damages and other relief arising from Defendant's unfair and deceptive business practices. Defendant has violated California consumer protection acts, and Defendant has breached its express and implied warranties. Plaintiffs allege violations of the California Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.* ("CLRA"); Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.* ("UCL"); breach of express warranty under California law; breach of the implied warranty of merchantability under California law; as well as violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. ("MMWA").

## PARTIES

10.     Plaintiff Jordan Colosimo ("Plaintiff Colosimo") is a citizen and resident of West Palm Beach, Florida.  Plaintiff Colosimo leased a 2019 Acura MDX from the Acura dealership, and has two years remaining on his three-year lease.

11.     Since the start of his lease, Plaintiff Colosimo noticed hesitation and deceleration issues while driving the Vehicle. Plaintiff Colosimo took the Vehicle to the Acura dealership where they kept it for over four weeks. Upon information and belief, the dealership changed the rear differential and the brake booster, and the dealership referred his case to Defendant's Corporate Technical Division.  The dealership indicated that it had repaired the Vehicle Defect, but it has not.  Defendant's Corporate Technical

2

Division contacted him, and Plaintiff Colosimo reported to the Corporate Technical Division that he was still experiencing problems with his Vehicle.

12.    Plaintiff Colosimo's Vehicle now performs worse than it did before he took it into the dealership. The Vehicle still has hesitation issues, and no one in Plaintiff Colosimo's family is willing to drive the Vehicle for its safety and reliability issues.

13.    Plaintiff Evan Wahl ("Plaintiff Wahl") is a citizen and resident of California. Plaintiff Wahl owns a 2020 Acura RDX that he purchased from the Spreen Acura dealership in Riverside, California.

14.    Since his purchase, Plaintiff Wahl has noticed hesitation when depressing the gas pedal, and that the Vehicle was "jumpy" in lower gears every time he drives the Vehicle. Plaintiff Wahl took the Vehicle to the Acura dealership in Escondido, California, and the Acura service department told Plaintiff Wahl that nothing was wrong with his Vehicle.

15.    Defendant American Honda Motor Co., Inc. is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. Defendant is headquartered in California at 1919 Torrance Boulevard, Torrance, CA 90501. Defendant conducts business and operates retail locations throughout the State of California and the United States. Defendant does substantial business in California, with a significant portion of the sales and leases made in California.

16.    The conduct that forms the basis for each and every Class member's claims against Defendant, such as developing, marketing, and implementing the actions complained of herein, emanated from Defendant's headquarters in California, and is consistent with directives of Defendant's personnel in California.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed classes, the aggregated claims of the individual Class members exceed the sum or value

of $5,000,000.00 exclusive of interest and costs, and at least one Plaintiff is a citizen of a state different from Defendant.

18.     This Court may exercise jurisdiction over Defendant because Defendant's headquarters are located in Torrance, California, and Defendant does business throughout this District.  Thus, Defendant has established sufficient contacts in this District such that personal jurisdiction is appropriate.

19.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**FACTUAL ALLEGATIONS**

**<u>The Defect</u>**

20.     In a traditional setup for vehicles with gasoline engines, there are physical connections between the gas pedal and the throttle to constrain or expand the amount of air going into the engine. The more one presses the gas pedal, the more air enters the engine, and sensors detect that air and increase the throttle position. The process of increasing the throttle triggers an instruction to the fuel injectors to provide more fuel to the engine, generating more power and ultimately, accelerating.

21.     By contrast, Defendant's throttle system is a "throttle by wire" system, where, instead of cables, there is a sensor attached to the gas pedal that measures how far it has been depressed. The measurement is sent to the throttle control computer, which then sends a command to the throttle body to limit or expand the amount of air going into the engine.

22.     If the throttle is stuck open, a vehicle can be thrown into neutral, or a "limp mode" in order to prevent engine, transmission, or other vehicle damage. By contrast, if the throttle does not respond to the command to open, it will fail to allow more air into the engine causing deceleration of the vehicle.

23.     Upon information and belief, the Vehicles suffer from a Defect in design, manufacture, and/or workmanship where the throttle receives conflicting instructions

from the gas pedal, the ECM, and/or the TCM. In such situations, the throttle will malfunction, and either becomes stuck in position or otherwise fails to follow the command of the driver. This malfunction will cause the Vehicles to hesitate, stall, shut down, go into limp mode, or decelerate instead of accelerate at the command of the driver depressing the gas pedal.

24.    As a result of the Defect, Plaintiffs and Class members are unable to use their Vehicles as advertised and have incurred damages as a result. The Defect is a significant safety concern, and, though numerous consumers have specifically complained about it, Defendant has failed to adequately address the Defect. Plaintiffs and members of the proposed classes cannot rely upon their Vehicles safely transporting them from place to place because, at any time, the Vehicles may spontaneously decelerate, increasing the likelihood of accidents on the road, serious injury, and even death.

25.    Defendant knew or should have known that the Defect was not known or reasonably discoverable by Plaintiffs and Class members before they purchased or leased the Vehicles.

26.    Upon information and belief, before Plaintiffs and Class members purchased or leased their Vehicles, and since pre-production road testing of the Vehicles starting late 2014, Defendant knew about the Defect through sources not available to consumers. As such, Defendant knew or should have known that the Vehicles experience a failure to accelerate, shifting into neutral, and sudden stalls and shutdowns while being driven.

### **Complaints Regarding the Vehicle Defect**

27.    Defendant also was provided notice by numerous consumer complaints to Defendant and Acura dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from Acura dealers about the problem. Publicly available facts confirm Defendant's knowledge.

28.     Indeed, the Internet is littered with consumer complaints about the sudden deceleration of the Vehicles, and terrifying accounts of "near-misses." For example, on the vehie.com website, there are numerous complaints regarding the deceleration problem, and the safety issues associated with, the Vehicles. The website indicates that there are 276 complaints about the Acura MDX, and at least 90 of them pertain to the power train of the Acura MDX, 41 of them concern the engine, and 30 pertain to vehicle speed control.[1]   The vehie website also indicates that it has published 197 complaints about the Acura RDX, 40 of which pertain to the engine, 20 pertain to the power train, and 13 pertain to vehicle speed control.[2]

29.     One anonymous consumer wrote on January 3, 2020 of the 2019 Acura RDX [spelling and grammar errors in original]:

> MY BRAND NEW 2019 Acura RDX THAT HAD 9200 MILES ON IT SHUT DOWN ON ME ON THE FREEWAY. IT WAS RAINING AND I PULLED OUT TO PASS, GOING ABOUT 75 MPH, AND IT WENT INTO WHAT I NOW KNOW IS LIMP MODE AND THE ENGINE LIGHT FLASHED ON AND OFF AND THE ENGINE WAS MAKING A DIFFERENT SOUND THAN NORMAL. I HAD SOMEONE TAILGATING ME, SO I AM LUCKY IT DIDNT CAUSE AN ACCIDENT. GOT PULLED OVER AND CALLED THE DEALERSHIP AND THEY SAID IT NEEDED TO COME IN. THEY SPECULATE RAINDROPS GOT ON THE ENGINE FILTER (FORGET THE NAME) AND THE CAR THOUGHT IT WAS MALFUNCTIONING AND SHUT DOWN. I HADNT TURNED THE CAR OFF BECAUSE I WAS AFRAID ID BE STRANDED, SO I DONT KNOW IF IT WOULD HAVE RESET ITSELF. STILL, I BOUGHT THIS CAR FOR DEPENDABILITY AND IVE LOST ALL TRUST. I HAD HAD THREE ACURA CARS BEFORE THIS. IVE BEEN TOLD THERES NO FIX AND ENGINEERS ARE WORKING ON IT BUT THEY COULDNT RECREATE THE SITUATION AND ITS WORKING OKAY NOW. THIS IS A SAFETY ISSUE. I COULD HAVE BEEN ON A TWO-LANE PASSING AND COULDNT GET BACK IN WHEN IT SHUT DOWN BEFORE AN ONCOMING CAR! SO I CANT DRIVE IT IN THE RAIN OR PASS NOW? THE DEALERSHIP HAD ONE OTHER RDX DO THE SAME THING AND IM READING SEVERAL ONLINE. I FEEL LIKE ITS RUSSIAN ROULETTE. DO I JUST HAVE A LEMON OR IS IT A DESIGN FLAW? IM SCARED! THE CAR IS STILL AT THE DEALERSHIP, BUT THERE'S NOTHING THAT CAN BE DONE

[1] https://www.vehie.com/complaints/acura?vehie_model=mdx (last accessed May 7, 2020).
[2] https://www.vehie.com/complaints/acura?vehie_model=rdx (last acessed May 7, 2020).

CLASS ACTION COMPLAINT, CASE NO. 2:20-cv-04187

BECAUSE EVERYTHING CHECKS OUT. THEY DON'T HONESTLY KNOW WHAT TO DO, SO THE POSSIBILITY OF BEING STRANDED OR MISSING A FLIGHT OR BEING INJURED OR KILLED IS NOT OFF THE TABLE! THEY KNOW THEY HAVE A PROBLEM BUT NOT MAKING IT PUBLIC KNOWLEDGE. IT'S A BRAND NEW DESIGN SO THERE MUST BE A FLAW.[3]

30.    Another consumer wrote on December 23, 2019 of the 2019 Acura RDX [spelling and grammar errors in original]:

I was driving on a two-lane highway in rural mississippi. Once on a straightaway and with plenty of space to pass, i attempted to do so. As soon as i accelerated, the pedal went to the floor, i lost all power, engine light flashed on, and i was trapped in the left lane with oncoming traffic racing at me. With less than two seconds to spare and with the help of downhill motion, i was able to squeeze ahead of the vehicle i was attempting to pass and into the right lane just as oncoming traffic whizzed by. I sat on the shoulder of the highway and literally shook for about an hour. The car was towed to acura of jackson. While sitting at their dealership, i found all these similar complaints. Like all the others, no codes showed up and nothing could be done. They kept the car for three days and could not get it to replicate the situation. I drove it back to texas and am just waiting for the issue to happen again... Praying that if and when it does, it will not be a life-threatening situation this time. Why is this continuing to be reported and nothing is being done? Others reported this happening in heavy rain. I was traveling at 70mph on a wet road at the time. It was cloudy, but it was not raining at the time. The car was in comfort mode at the time.[4]

31.    On March 15, 2020, another consumer wrote about the 2017 Acura MDX [spelling and grammar errors in original]:

WE WERE DRIVING 70MPH ON THE INTERSTATE I10 HEADED TO NEW ORLEANS WHEN OUR VEHICLE SUDDENLY AND WITHOUT WARNING LOST ACCELERATION THE DASHBOARD LITE UP LIKE A CHRISTMAS TREE TELLING ME TO PULL OVER IMMEDIATELY AND THEN ELECTRIC PARKING BRAKE ERROR, TRANSMISSION ERROR AND AN EMISSIONS ERROR ALL AT ONCE. THIS WAS A VERY DANGEROUS INCIDENT AND WE SOMEHOW MANAGED TO GET TO THE SMALL SIDE OF THE ROAD ON THIS BUSY INTERSTATE. IT SCARED THE BOTH US! THE MDX WOULD NOT GO INTO DRIVE OR NEUTRAL? WHILE WAITING FOR THE TOW TRUCK WE ALMOST WERE SIDE SWIPED. THIS CAR WAS

---

[3] https://www.vehie.com/complaints/acura?vehie_model=rdx (last accessed May 7, 2020).
[4] *Id.*

CLASS ACTION COMPLAINT, CASE NO. 2:20-cv-04187

PURCHASED FOR THE SAFETY FEATURES AND IT HAS REALLY CAUSED MY WIFE AND I TO LOSE ALL FAITH AND NOW CANNOT DEPEND ON IT. OUR VEHICLE HAS 44K ON IT AND IT WAS EVEN A ACURA CERTIFIED PRE-OWNED INSPECTED VEHICLE. I HAVE LEARNED THERE IS A CLASS ACTION LAWSUIT FOR THIS SAME TYPE OF INCIDENT AND MODEL OF ACURA. THIS CAR IS DANGEROUS AND ACURA BETTER OWN UP TO THIS FAULTY VEHICLE. THIS NEEDS TO BE RECALLED![5]

32.     Yet another consumer posted about the deceleration on September 20, 2018 about the 2017 Acura MDX [spelling and grammar errors in original]:

THE TRANSMISSION IN THE CAR DECELERATES UNEXPECTEDLY, THE VEHICLE STALLS WHEN TRYING TO ACCELERATE, IT ALSO JERKS WHEN SHIFTING GEARS, ALL OF THESE ISSUES ARE EXTREMELY DANGEROUS WHEN DRIVING ON THE HIGHWAY, SWITCHING LANES AND SIMPLY DRIVING AND TRYING TO MANEUVER FROM A STOP. WE HAVE ALSO HAD A WARNING POP UP ON THE DASHBOARD TO IMMEDIATELY STOP THE VEHICLE IN THE MIDDLE OF THE STREET BECAUSE THERE IS AN ISSUE WITH THE TRANSMISSION, WE TOOK THE CAR TO THE DEALERSHIP AND THEY SAID THEY DONT SEE THE SPECIFIC CODE AND TO JUST HAVE IT TOWED IN NEXT TIME. I BOUGHT THIS CAR FOR SAFETY, WE JUST HAD A BABY AND NOW I AM SCARED TO DRIVE THE CAR ON A DAILY BASIS, WHAT IF IT DOESNT ACCELATE WHEN NEEDED AND WE GET HIT! WE HAVE BROUGHT THE TRANSMISSION ISSUE UP MUTLIPLE TIMES; HOWEVER, ALL WE HAVE BEEN TOLD IS THAT THIS IS A NORMAL THING FOR THE Acura MDX 2017 YEAR WE HAVE. THIS IS NOT NORMAL, IT IS EXTREMEMLY UNSAFE.[6]

33.     Other car review websites contain similar accounts. For example, one (of many consumers) reported on the acurazine.com website on July 23, 2018 of his 2019 Acura:

I was driving on the highway about 75mph and I was trying to pass someone. Then my engine cutout and the engine light came on. I was unable to accelerate I believe it's called "limp" mode. I had to pull over, shut the car off and turn it back on and everything is fine.  Has as anyone had this issue? I use premium gas, and the car has 1500 miles on it.[7]

---

[5] https://www.vehie.com/complaints/acura?component_id=10 (last accessed May 7, 2020).
[6] *Id.*
[7] https://acurazine.com/forums/3g-rdx-problems-fixes-458/limp-mode-2019-spec-971802/ (last accessed May 7, 2020).

CLASS ACTION COMPLAINT, CASE NO. 2:20-cv-04187

34.     In addition to the myriad consumer reports and complaints available on public fora, Defendant should have learned of this widespread Defect simply from the sheer number of reports received from dealerships and from customer complaints directly to Defendant. Defendant's customer relations department collects and analyzes field data including repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

35.     Yet, on information and belief, no Class member has received a repair from Defendant or any Defendant authorized dealer that permanently resolves the Defect.

### Defendant's Warranty

36.     Defendant's Vehicles are covered by a New Vehicle Limited Warranty (4-year/50,000-mile limited warranty) and a Powertrain Limited Warranty (6-year/70,000-mile powertrain limited warranty), under which Defendant will repair or replace any part that is defective in material or workmanship under normal use.

37.     The Vehicles are defective insofar as they routinely experience unintended and uncontrollable deceleration while being driven under normal circumstances. Defendant has failed to warn purchasers and lessees about the Defect and has failed to instruct purchasers and lessees as to how they should respond when their Vehicles manifest the Defect.

38.     Defendant did not include any such warnings or instructions in its owner's guides or manuals, or in any representation about the Vehicles. In fact, Defendant has made no efforts to make purchasers and lessees aware of any deceleration issues with the Vehicles.

39.     Plaintiffs and the other Class members reasonably relied on Defendant's warranties regarding the safety and reliability of their Vehicles, including the representation that the Vehicles contained no known defects at the time of sale.

40.     Despite warranting that Defendant will "repair or replace" (including the parts and labor charges) any powertrain component defective in material or

9

workmanship, Defendant sells its Vehicles knowing that the Vehicles uncontrollably decelerate. Defendant omits that the Vehicles may unsafely decelerate and omits how an operator should react should this happen. Despite requests by Plaintiffs and Class members, Defendant has refused to repair this known Defect, which is a serious safety hazard.

41.    Defendant's actions and omissions constitute a breach of its warranties. Further, Defendant's advertised statements that the Vehicles offer superior performance and control in high-performance driving conditions are false and deceptive, and Defendant's omissions regarding the Defect constitute breach of express and implied warranties.

**CALIFORNIA LAW APPLIES NATIONWIDE TO THESE CLAIMS**

42.    The State of California has a significant interest in regulating the conduct of businesses operating within its borders. California, which seeks to protect the rights and interests of California and all residents and citizens of the United States against a company headquartered and doing business in California, has a greater interest in the claims of Plaintiffs and Class members than any other state or country and is most intimately concerned with the claims and outcome of this litigation.

43.    The principal place of business of Defendant, located at 1919 Torrance Boulevard in Torrance, California 90501, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including its marketing, development, and major policy, financial, and legal decisions.

44.    Defendant's response to the allegations herein, and corporate decisions surrounding such response, were made from and in California.

45.    Defendant's breaches of duty to Plaintiffs and the Class emanated from California, and the Vehicles at issue herein were designed, manufactured, and tested in California.

46.     Application of California law with respect to Plaintiffs' and Class members' claims is neither arbitrary nor fundamentally unfair because California has a state interest in the claims of the Plaintiffs and the Class based upon Defendant's significant and ongoing contacts with California.

47.     Under California's choice of law principles, which are applicable to this action, the common law of California applies to the common law claims of all Class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's consumer protection laws may be applied to nonresident Plaintiffs and Class members.

## CLASS ACTION ALLEGATIONS

48.     Plaintiffs bring this lawsuit individually and as a class action on behalf all others similarly situated pursuant to Federal Rules of Civil Procedure ("Rule") 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

49.     The Nationwide Class and Sub-Class are defined as:

> All purchasers or lessees of Defendant's model years 2016-2020 Acura MDX or 2019-2020 Acura RDX.

(collectively, the "Nationwide Classes").

50.     The alternative California Class and Sub-Class are defined as:

> All purchasers or lessees in California of Defendant's model years 2016-2020 Acura MDX or 2019-2020 Acura RDX.

(collectively, the "California Classes," and collectively with the Nationwide Classes, the "Classes").

51.     Excluded from the Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class definitions if

discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

52. <u>Numerosity</u>: Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court. The Class members are readily identifiable from information and records in Defendant's possession, custody, or control.

53. <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class members, are or were owners of Defendant's model years 2016-2020 Acura MDX or 2019-2020 Acura RDX. Plaintiffs, like all Class members, have been damaged by Defendant's misconduct in that, *inter alia*, Plaintiffs purchased or leased a defective Vehicle that renders the Vehicle unsafe and unusable. Furthermore, the factual bases of Defendant's misconduct are common to all Class members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class members.

54. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and Class members that predominate over any individual questions. These common legal and factual issues include the following:

      a. Whether the Vehicles suffer from one or more Defect;

      b. Whether the Defect in the Vehicles causes unintended and uncontrollable deceleration or other performance issues related to the acceleration of the Vehicles;

      c. Whether the Defect creates or constitutes an unreasonable safety risk;

      d. Whether the Vehicles have suffered a diminution of value;

      e. Whether Defendant had a duty to disclose the Defect to Plaintiffs and Class members;

f.  Whether Defendant knew or should have known of the existence of the Defect;

g.  Whether Defendant's marketing and advertising of the Vehicles was false and misleading;

h.  Whether Defendant concealed facts from Plaintiffs and Class members about the performance and safety of the Vehicles;

i.  Whether Defendant concealed facts from Plaintiffs and Class members about the Defect;

j.  Whether Defendant knew or should have known that its representations were false, or that its representations omitted material facts;

k.  Whether Defendant's conduct was a violation of the CLRA;

l.  Whether Defendant's conduct was a violation of the UCL;

m. Whether Defendant breached its warranties under the MMWA;

n.  Whether Plaintiffs and other Class members have sustained damages as a result of Defendant's wrongful business practices described herein, and the proper measure of damages.

55.    Adequate Representation: Plaintiffs will fairly and adequately protect the interests of Class members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

56.    Predominance and Superiority: Plaintiffs and Class members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class members' individual claims, it is likely that few Class members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class members

13

will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq*.**
**(On behalf of the Nationwide Classes or,**
**in the Alternative, the California Classes)**

57.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

58.     Plaintiffs bring this cause of action individually and on behalf of the Nationwide Classes or, in the alternative, the California Classes against Defendant.

59.     Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

60.     Plaintiffs and Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

61.     Plaintiffs' and Class members' Vehicles constitute "goods" as defined by Cal. Civ. Code § 1761(a).

62.     Plaintiffs' and Class members' purchases and/or leases of the Vehicles constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

63.     Plaintiffs' and Class members' use their Vehicles for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

64.     Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the transactions at issue occurred in this District.  (*See* Declaration of Tina Wolfson, attached hereto.)

65.     By failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiffs and prospective Class members, Defendant violated California Civil Code § 1770(a), as it represented that the Vehicles had characteristics and benefits

that they do not have and represented that the Vehicles were of a particular standard, quality, or grade when they were of another.

66.    Defendant's active concealment, failure to disclose, and subsequent misrepresentations violated the California Consumers Legal Remedies Act ("CLRA") in the following manner:

a.    In violation of Section 1770(a)(5), Defendant made misrepresentations and omissions concerning the benefits, performance, and reliability, safety and performance of the Vehicles;

b.    In violation of Section 1770(a)(7), Defendant misrepresented that the Vehicles were of a particular standard, quality, and/or grade when they were of another (unsafe and under-performing);

c.    In violation of Section 1770(a)(9), Defendant advertised its Vehicles with an intent not to sell them as advertised (by selling them with unsafe and underperforming acceleration systems it knew contained a Defect);

d.    In violation of Section 1770(a)(16), Defendant misrepresented that Vehicles were supplied in accordance with previous representations when they were not (by selling them with unsafe and underperforming acceleration systems it knew contained a Defect).

67.    Defendant knowingly misrepresented and omitted material facts regarding the Vehicles' safety and performance, and such misrepresentations or omissions were material to Plaintiffs and Class members because a reasonable person would have considered safety and performance material.

68.    Plaintiffs and Class members relied upon Defendant's material nondisclosures and misrepresentations, and had Plaintiffs and Class members known the truth about the safety and performance issues in the Vehicles, they would not have purchased the Vehicles.

69.    As a direct and proximate result of Defendant's material nondisclosures and misrepresentations, Plaintiffs and Class members have been irreparably harmed.

70.     On behalf of the Class, Plaintiffs seek injunctive relief in the form of an order enjoining Defendant from making such material misrepresentations and failing to disclose or actively concealing its aforementioned practices.   Plaintiffs also seek compensatory and punitive damages under the CLRA, and attorneys' fees and costs.

71.     In accordance with Cal. Civ. Code § 1782(a), concurrently with the filing of this Complaint, Plaintiffs' counsel served Defendant with notice of the CLRA violations by certified mail return receipt requested.

72.     If Defendant fails to provide appropriate relief for its CLRA violations within 30 days of receipt of Plaintiffs' notification letter, Plaintiffs will amend this Complaint to also seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

**SECOND CAUSE OF ACTION**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of the Nationwide Classes or,**
**in the Alternative, the California Classes)**

73.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

74.     Plaintiffs bring this cause of action individually and on behalf of the Nationwide Classes or, in the alternative, the California Classes against Defendant.

75.     California Business & Professions Code § 17200, *et seq.* ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

76.     Defendant knew the Vehicles were defective in design, materials, manufacture, and/or workmanship, would fail prematurely, and were not suitable for their intended use.

77.     In failing to disclose the Defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

78.	In failing to disclose the Vehicle Defect, Defendant knowingly, intentionally, and/or negligently concealed material facts and breached its duty not to do so.

79.	Defendant was under a duty to Plaintiffs and Class members to disclose the Defect in the Vehicles because:

a)	Defendant was in a superior position to know the true state of facts about the acceleration system contained in the Vehicles;

b)	Defendant actively concealed the Defect from Plaintiffs and Class members; and

c)	The Defect poses a safety risk to Plaintiffs.

80.	The facts concealed by Defendant to Plaintiffs and Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Vehicles. Had they known of the Defect, Plaintiff and the other Class members would have paid less for the Vehicles or would not have purchased or leased them at all.

81.	Defendant continued to conceal the Defect or failed to remedy the Defect even after the Defect was independently exposed to consumers.  Defendant continues to fail to remedy the Defect.

82.	Defendant has violated and continues to violate the UCL's prohibition against engaging in "unlawful" business acts or practices, by, among other things, violating the CLRA.

83.	Defendant's acts, omissions, and conduct also violate the unfair prong of the UCL because Defendant's acts, omissions, and conduct, as alleged herein, offended public policy and constitutes immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and Class members.  The gravity of Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests, other than Defendant's conduct described herein.

84.    By failing to disclose and actively concealing the Defect in its Vehicles, Defendant engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

85.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and Class members have suffered and will continue to suffer actual damages.

86.    Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to Sections 17203 and 17204 of the UCL.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty – Magnuson-Moss Warranty Act**
**(15 U.S.C. §§ 2301,** *et. seq.***)**
**(On behalf of the Nationwide Classes)**

87.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

88.    The defective Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

89.    Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

90.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

91.    Defendant's express warranty is a written warranty within the meaning of 15 U.S.C. § 2301(6).

92.    Defendant provided a 4-year, 50,000-mile New Vehicle Limited Warranty, and a 6-year, 70,000-mile Powertrain Limited Warranty. Defendant breached the express warranties by selling and leasing Class Vehicles with the Defect, requiring repair or replacement within the warranty period, and refusing to honor the express warranties by repairing or replacing, free of charge, powertrain components that contribute to the Defect. In addition, when authorized dealers did attempt repairs, Defendant nevertheless

breached the express warranties by failing to permanently repair the Defect in Plaintiffs' and Class members' Vehicles, thus failing to actually repair the Defect.

93.    Defendant's breach of the express warranties has deprived Plaintiffs and Class members of the benefit of their bargain by failing to provide Vehicles capable of accelerating, especially at highways, without stalling, suddenly decelerating, shutting down, or shifting to neutral.

94.    Defendant's refusal to provide an adequate repair or replacement of the Vehicles violates 15 U.S.C. § 2304.

95.    Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class members brought their Vehicles in for diagnoses and repair of the Defect.

96.    Plaintiffs and Class members have suffered damages directly and proximately caused by Defendant's breach of the express warranties and are entitled to recover damages including actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty – Magnuson-Moss Warranty Act
### (15 U.S.C. §§ 2301, *et. seq.*)
### (On behalf of the Nationwide Classes)

97.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

98.    Plaintiffs bring this cause of action individually and on behalf of the Nationwide Classes against Defendant.

99.    The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301.

100.   Plaintiffs and Class members are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

101.   Defendant is a "supplier" of consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

102.   15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

103.   Defendant provided Plaintiffs and Class members with an implied warranty that the Vehicles are merchantable, pass without objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.

104.   However, the Vehicles are not merchantable because they are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Vehicles suffered from a latent Defect at the time of sale and/or lease. The Vehicles are thereafter not fit for their particular purpose of providing safe and reliable transportation. The Vehicles would not pass without objection in the trade, are not adequately labeled and do not comport the promises and affirmations on the label because the Vehicles are prone to random and uncontrollable deceleration, stall, shutdown, or shift into neutral when the driver tries to accelerate, particularly at highway speeds.

105.   Defendant's breach of implied warranties has deprived Plaintiffs and Class members of the benefit of their bargain by failing to provide them with Vehicles that reliably and safely accelerate when the gas pedal is depressed.

106.   Defendant knew or was reckless in not knowing of the lack of truth in its statements about the safety and reliability of the Vehicles, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Defect and associated safety risk, but failed to repair or replace the defective powertrain system components and/or disclose the Defect.

107.   Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiff and Class members brought their Vehicles in for diagnoses and repair of the Defect.

108.   As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class members sustained and incurred damages and other losses in an amount to be determined at trial.

109.   Defendant's conduct damaged Plaintiffs and Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty (Cal. Comm. Code § 2313)**
**(On behalf of the Nationwide Classes or,**
**in the Alternative, the California Classes)**

110.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

111.   Plaintiffs bring this cause of action individually and on behalf of the Nationwide Classes or, in the alternative, the California Classes against Defendant.

112.   As an express warrantor, manufacturer, and merchant, Defendant had certain obligations pursuant to its warranties to repair and replace defects.

113.   Defendant expressly warranted the powertrain, under the Powertrain Limited Warranty, promising to repair or replace components that fail to function properly during normal use, for 6 years or 70,000 miles.

114.   Defendant sells the Vehicles knowing that the Defect causes serious safety issues when the Vehicles routinely, unintentionally, and uncontrollably decelerate so that Plaintiffs and Class members are deprived of a warranted feature of the Vehicles.

115.   The Defect was present at the time of sale and/or lease to Plaintiffs and Class members.

116.   Defendant breached (and continues to breach) its warranties because it wrongfully, uniformly, and repeatedly refuses to repair the Defect, forcing Plaintiffs and Class members to either (a) drive their Vehicles at the risk of the Vehicles spontaneously decelerating, putting the Plaintiffs and Class members at great risk of an accident, or (b) not drive their Vehicles at all in order to avoid such a risk.

21

117.   Plaintiffs and Class members have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under the terms of the warranty, including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

118.   Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

119.   Upon information and belief, Defendant received numerous complaints, service calls and visits, notices of the need for repair and resulting safety issues, and requests for warranty repairs and coverage relating to the Defect from other members of the Class.

120.   Defendant and its authorized agents (the dealers) have wrongfully, uniformly, and repeatedly refused and/or failed to properly repair or replace the powertrain.

121.   Accordingly, Plaintiffs and Class members have suffered damages caused by Defendant's breach of the warranty and are entitled to recover damages as set forth herein.

**SIXTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability (Cal. Comm. Code § 2314)**
**(On behalf of the Nationwide Classes or,**
**in the Alternative, the California Classes)**

122.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

123.   Plaintiffs bring this cause of action individually and on behalf of the Nationwide Classes or, in the alternative, the California Classes against Defendant.

124.   Defendant is and was at all relevant times a merchant with respect to the Vehicles under Cal. Com. Code § 2104.

125.   By operation of law, Defendant, as a manufacturer of the Vehicles and as offeror of its warranties, impliedly warranted to Plaintiffs and Class members that the Vehicles they purchased were of merchantable quality and fit for their ordinary and intended use of operating without spontaneous, unintentional, and uncontrollable deceleration.

126.   Defendant breached the implied warranty of merchantability in connection with its sale and/or lease and distribution of the Vehicles. At the point of sale and/or lease, the Vehicles contained a latent Defect that rendered the Vehicles defective and unfit for their ordinary and intended purposes.

127.   At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of the Vehicles.

128.   Defendant knew or had reason to know of the specific use for which Plaintiffs and Class members purchased the Vehicles. Had Plaintiffs and Class members known that the Vehicles were defective, they would not have purchased them or would not have purchased them at the price they paid.

129.   Because of the Defect, the Vehicles were not in merchantable condition when sold and were not fit for their ordinary and intended purpose. Defendant knew about the Defect in its Vehicles, and Defendant had an opportunity to cure its breach of its warranty. Despite knowing the Vehicles are/were defective prior to or concurrent with its sale and/or lease, Defendant has refused to provide Plaintiffs and Class members with appropriate and effective warranty relief. As a result, Plaintiffs and Class members are left without the functional Vehicles they reasonably expected when making their purchasing and/or leasing decisions.

130.   Plaintiffs and Class members have complied with all obligations under the warranty, and have afforded Defendant a reasonable opportunity to cure the breach of written warranties.

131.   Accordingly, Defendant is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

# RELIEF REQUESTED

Plaintiffs, individually and on behalf of all others similarly situated, request the Court enter judgment against Defendant, and accordingly request the following:

A.   An order certifying the proposed Classes and designating Plaintiffs as the named representatives of the Classes and designating the undersigned as Class Counsel;

B.   An order requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

C.   An award to Plaintiffs and Class members of compensatory, actual, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

D.   A declaration that Defendant must disgorge, for the benefit of Plaintiffs and Class members, all or part of the ill-gotten profits it received from its deceptive and unfair business practices, or make full restitution to Plaintiffs and Class members;

E.   An award of attorneys' fees and costs pursuant to all applicable laws;

F.   An award of pre-judgment and post-judgment interest, as provided by law;

G.   Leave to amend the Complaint to conform to the evidence produced at trial; and

H.   Such other relief as may be appropriate under the circumstances.

# DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a trial by jury as to all matters so triable.

Dated: May 7, 2020

Tina Wolfson
Theodore W. Maya
Christopher E. Stiner
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT, CASE NO. 2:20-cv-04187

## **DECLARATION OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1.      I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiffs in the above-captioned action.  I am admitted to practice law in California and before this Court and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Venue is proper in this Court because Plaintiffs suffered injuries as a result of Defendant's acts in this District, including Defendant's decision to sell defective Vehicles in this District.  Defendant regularly operates retail locations in this District and is registered to do business in California.

3.      Plaintiff Jordan Colosimo ("Plaintiff Colosimo") is a citizen and resident of Florida.

4.      Plaintiff Evan Wahl ("Plaintiff Wahl") is a citizen and resident of California.

5.      Defendant American Honda Motor Co., Inc. is a California corporation registered to do business in California with its headquarters at 1919 Torrance Boulevard, Torrance, California 90501.

I declare under penalty of perjury under the laws of the United States and the State of California this 7th day of May 2020 in Los Angeles, California that the foregoing is true and correct.

_____
Tina Wolfson

25

CLASS ACTION COMPLAINT, CASE NO. 2:20-cv-04187